The judgment which is declared on in this case is compared to a foreign judgment on which assumpsit will lie; but, if *Page 309 
this position be correct, it follows that it is only prima facie evidence of the debt, and that upon the general issue of non assumpsit it is competent to the defendant to impeach the justice of the judgment by showing it to have been irregularly or unduly obtained, for in this action anything may be given in evidence that shows that nothing is due. Bull. N. P., 152. But I think it may be collected from the acts on this subject that the Legislature meant to give judgments (574) rendered by the magistrate a conclusive effect between the parties as to the subject-matter of them, until reversed or set aside, to prevent the merits of them from being overhauled in an original suit; if they were not already recorded in the strict technical meaning of the term, to give them as much force as judgments rendered in any court of the State. I derive this inference, in the first place from the language of Laws 1802, ch. 609, which provides that when judgment shall be had, and execution not issued within twelve months thereafter, it shall be lawful to sue for and recover the same by warrant before a justice of the peace, and that the former judgment shall be evidence of the debt, subject to such deductions as the defendant may make appear on trial to have been paid in full or in part of said former judgment. By making it evidence of the debt must be understood conclusive evidence, especially where it is further prescribed that the effect of such evidence shall be avoided only by posterior payments. Thus it receives the qualities of a record which cannot be impeached by any supposed defect or illegality in the contract on which it is founded, the circumstances of which need not be stated. No averment can be made against the validity of a record; therefore, no matter of defense can be pleaded which existed anterior to the recovery of the judgment. That the Legislature considered such judgment as a debt of record further appears from Laws 1803, ch. 627, which withholds the stay of execution where the evidence of a debt on which the judgment is founded shall be that of a former judgment. And the subsequent act of 1820, ch. 1053, which limits judgments to three years, prevents their being revived by action, suit, scire facias, or other process after that time. Though I am not aware of any act authorizing such judgment to be revived by scire facias, yet it had grown into practice before the law of 1820 authorized an original warrant; and as a scirefacias can be founded only on some matter of record, and to (575) which the defendant cannot plead any matter which he might have pleaded in the original, it further shows the light in which justices' judgments were received. In addition to this, it may be remarked that these judgments have ever been considered as debts of record in the administration of assets, and have stood upon the same footing with those rendered by the courts. Evidence of the same effect is furnished by Laws 1797, ch. 477, which allows, under regulations providing *Page 310 
for its authenticity, an execution to issue to another county from the judgment of a justice. The extensive civil jurisdiction conferred upon justices of the peace in this State, far from producing the public convenience, and aiding in the administration of justice in the degree intended, would be a positive evil and the source of endless litigation if their judgments were of no higher validity than simple contracts. A dissatisfied party against whom a recovery was had, instead of appealing or pursuing some other legal course to have the judgment reexamined, would issue a new warrant to recover back the money; and if the principle were once established that a judgment might be opened and the cause of action again tried by another justice on the suggestion of mistake or injustice in the former trial, the consequences would be most mischievous. It is essential to the common security and peace that a principle sanctioned by so many adjudications should be maintained and enforced; that what has been regularly decided by a competent tribunal with regard to the same cause of dispute and between the same parties, or those succeeding to their rights, shall be conclusively regarded as true. Thus a recovery in any one suit upon issue joined or matter of title is conclusive upon the subject-matter of such title, and a judgment in such species of action is conclusive upon its own subject-matter, by way of bar to future litigation, for the thing thereby decided. 3 East, 346. And not only is an actual adjudication binding upon (576) the parties, but even when a person who had paid a debt, but, after being sued for it, could not find the receipt, and paid it over again, it was ruled that he could not afterwards, upon finding the receipt, maintain an action to recover it back. 7 Term, 269. It is better to suffer a private inconvenience than a public mischief; and as every human judgment, let it terminate when it will, may be subject to error, the possibility of it ought not to annul its validity unless in a course of appellate examination. That a rule so wise and well calculated to promote the tranquillity of society by shortening litigation should be adopted in the code of all civilized nations seems to have been expected. Accordingly, we find it to be a part of the Roman law, as explained by Justinian, November 23, and transplanted thence into the jurisprudence of most of the continental nations. In the civil law, as it is in force in France, it is stated by Pothier that the authenticity of res judicata induces a presumption that everything contained in the judgment is true, and this presumption, being juris et de jure, excludes every proof to the contrary,res judicata pro veritate accipitur. For instance, the party who is condemned to pay anything is presumed really to owe it; the party in whose favor judgment is given may consequently, after signifying it, compel the other to pay the money by the seizure and sale of his effects, and no proof can be received from him in contradiction *Page 311 
of the debt. 1 Pothier, 550. This is exactly conformable to the principle of the common law in relation to the plea of nul tiel record before remarked on. All the courts in this State, from the highest to those held by individual magistrates, administer the general law of the land, and have both civil and criminal jurisdiction. According to the definition of law writers, they are all courts of record; for although the proceedings of none of them are enrolled in parchment, yet a written memorial of them is or ought to be preserved. All courts of record are in England said to be the King's courts, and therefore no (577) others have authority to fine and imprison; so that the erection of a new jurisdiction with power to fine and imprison makes it instantly a court of record. 2 Salk., 200. Courts not of record are said to be those of private men, whom the law will not entrust with any discretionary power over the lives and fortunes of others. The proceedings of these courts are not enrolled, but their existence, as well as the truth of the matters contained in them, must, if disputed, be tried and determined by a jury. They cannot take cognizance of any matters cognizable by the common law, unless under the value of 40 shillings, nor of any trespasses, having no process to arrest the person of the defendant. 2 Ins., 311. This description of courts is unknown to us, and if the test of a court of record be that it has power to fine and imprison, magistrates here must be so considered; for the power of giving judgment for fines, amercements, and penalties is conferred upon them in various instances. They were originally appointed as conservators of the peace, and their power at this day is chiefly conversant about the punishment and suppression of offenses. The civil jurisdiction which they exercise in this State is, in England, distributed among a great variety of inferior tribunals; but it cannot be inferred from the enlargement of their jurisdiction here that the authenticity of their acts is invalidated. They have, from the earliest times, been deemed judges of record, "and a memorial made by them of things done before them judicially in the execution of their office shall be of such credit that it shall not be gainsaid. One man may affirm a thing and another may deny it; but if a record once say the word no man shall be received to aver or speak against it; for if a man should be admitted to deny the same there never would be an end of controversies." 3 Burns, 3.
The other judges concurred.
PER CURIAM. Reversed.
Cited: Hamilton v. Wright, 11 N.C. 284, 286, 288, 289, 290, 291;Humphreys v. Buie, 12 N.C. 379. *Page 312 
(578)